IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 24-cv-01603-NYW-SBP

JAMES C. ANDERSON, and
ANDERSON PODIATRY CENTER, P.C.,

    Plaintiffs,

v.

BIEGLER GMBH, and
SOLACE ADVANCEMENT, LLC

    Defendants.

## ORDER

This matter is before the Court on the Defendant Biegler GmbH's Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(2), for Forum Non Conveniens, and Under Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss"), [Doc. 34], and Plaintiffs' Request for Judicial Notice of Adjudicative Facts (the "Motion for Judicial Notice"), [Doc. 41]. For the reasons set forth in this Order, the Motion for Judicial Notice and the Motion to Dismiss are respectfully **GRANTED**.

### BACKGROUND[1]

Plaintiff James C. Anderson ("Dr. Anderson") is a physician practicing in Fort Collins, Colorado at Anderson Podiatry Center, P.C. (with Dr. Anderson, "Plaintiffs"). [Doc. 1 at ¶¶ 25–26]. Defendant Biegler GmbH ("Defendant" or "Biegler") is an Austrian

---

[1] The Court takes the following well-pleaded factual allegations from the Complaint, [Doc. 1], and accepts them as true for purposes of the Motion to Dismiss, *see XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020).

corporation with its principal place of business in Austria.  [*Id.* at ¶ 28].

Plaintiffs allege that Biegler "was engaged in the manufacturing, sale, distribution and marketing" of a medical device called the "Stivax System," also referenced as the "Stivax device."  [*Id.* at ¶¶ 1–2, 28].  The Stivax device is "a single use, battery-powered, electrical nerve stimulator which is used for the stimulation of the vagus nerve via the ear."  [*Id.* at ¶ 3 (quotation omitted)].  Plaintiffs allege that Biegler and co-Defendant Solace Advancement, LLC ("Solace")[2] erroneously promoted the Stivax device as an implantable non-narcotic pain management medical device that was reimbursable under certain Medicare codes.  [*Id.* at ¶¶ 8–9].  Plaintiffs allege that "Defendants sold thousands of Stivax devices throughout the United States and including into Colorado and touted themselves as the market leader of the purported industry."  [*Id.* at ¶ 10].  According to Plaintiffs, "Defendants instructed Dr. Anderson and Anderson Podiatry how to bill Medicare and other government healthcare payors for the Stivax device using codes that Defendants . . . knew to be improper for the Stivax device."  [*Id.* at ¶ 11].

In 2016, the United States Food and Drug Administration ("FDA") granted approval for Biegler, which Plaintiffs allege was "responsible for the FDA approval to market the Stivax device in the Unites States," to market the Stivax device as an "electro-acupuncture device."  [*Id.* at ¶¶ 50–52, 55].  Biegler engaged Solace as the United States-based importer and distributor of the Stivax device.  [*Id.* at ¶¶ 24, 56].  Plaintiffs allege that Defendants engaged with a number of other non-parties to create the "Stivax System

---

[2] Plaintiffs allege that Solace is a "dissolved Michigan limited liability company."  [Doc. 1 at ¶ 24].  Plaintiffs obtained a Clerk's Entry of Default against Solace on July 25, 2024.  *See* [Doc. 21].  Although a year has passed since the entry of default, Plaintiffs have not moved for default judgment against Solace.  The Court addresses this below.

2

Enterprise":

> Biegler manufactured the device; Solace . . . imported and contracted with [non-party] Nightingale to distribute the Stivax device to medical providers; [non-party] NexMed fulfilled orders submitted by medical providers; and [non-parties] Haga, Nightingale, Dawkins and Burgess continued to mispresent the Stivax device through so-called presentations, training, education, and instructions to Plaintiffs and other providers.

[*Id.* at ¶ 81].

Plaintiffs "purchased hundreds of Stivax devices" and submitted claims for reimbursement to Medicare "using Stivax System Enterprise recommended [billing] codes" for implantable devices. [*Id.* at ¶¶ 77, 81, 85]. "Medicare claim[ed] at least $276,162.26 in overpayments made under" the erroneous codes. [*Id.* at ¶ 85].

Plaintiffs initiated this action on June 7, 2024. *See* [*id.*]. They assert six claims, each against both Defendants: (1) a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), [Doc. 1 at ¶¶ 127–37]; (2) a civil RICO conspiracy claim, [*id.* at ¶¶ 138–44]; (3) a fraudulent misrepresentation claim, [*id.* at ¶¶ 145–51]; (4) an intentional misrepresentation claim, [*id.* at ¶¶ 152–57]; (5) a civil conspiracy claim, [*id.* at ¶¶ 158–62]; and (6) a claim under the Colorado Consumer Protection Act, [*id.* at ¶¶ 163–74]. In the Motion to Dismiss, Biegler seeks dismissal of Plaintiffs' claims for lack of personal jurisdiction, forum non conveniens, and for failure to state a claim. *See* [Doc. 34].

## LEGAL STANDARDS

Personal jurisdiction is "an essential element of the jurisdiction of a district court," and without it, "the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). The plaintiff bears the burden of demonstrating a court's

3

personal jurisdiction over a defendant. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).

There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the lawsuit arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). General jurisdiction "permits a court to adjudicate any cause of action against" the defendant, "wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). In either case, due process requires that the defendant "have 'minimum contacts' with the forum . . ., such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In some instances, a foreign defendant has sufficient contacts with the United States as a whole "to justify the application of United States law and to satisfy federal standards of forum selection," but lacks sufficient contacts with any one state to render it subject to the jurisdiction of a state. *Archangel Diamond Corp. Liquidating Tr. v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1362–63 (D. Colo. 2014) (quotation omitted), *aff'd*, 812 F.3d 799 (10th Cir. 2016). Rule 4(k)(2) was promulgated to close that loophole. *Id.* The rule states that

> [f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction over the defendant would be consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). In other words, a court may exercise personal jurisdiction over a

4

defendant under Rule 4(k)(2) if three requirements are met: "(1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process." *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1310 (D. Colo. 2012). Rule 4(k)(2) "serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009).

When a court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). The Court accepts the well-pleaded allegations in the complaint as true "unless they are controverted by sworn statements." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020). The Court does not take conclusory or speculative allegations as true. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020); *Dudnikov*, 514 F.3d at 1069. If the parties present conflicting affidavits, all factual disputes in those affidavits must be resolved in the plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

## ANALYSIS

### I. Motion for Judicial Notice

The Federal Rules of Evidence permit a court to take notice of adjudicative facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b). Rule 201 reflects the longstanding

5

rule that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). However, a court may only take judicial notice of the existence of those documents and their contents, not to prove the truth of the matters asserted therein. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

In Plaintiffs' Motion for Judicial Notice, they ask the Court to "take notice of the following adjudicative facts relating to the Electronic Court Filing Numbers . . . contained in the docket in" *Munderloh v. Biegler GmBh*, No. 3:21-cv-08004-GMS (D. Ariz.). [Doc. 41 at 1]. Although Plaintiffs reference "following adjudicative facts" and ask the Court to take notice of such facts, they do not actually identify any "adjudicative facts" subject to judicial notice. *See generally* [*id.*]. Instead, Plaintiffs simply list eight docket entries from *Munderloh*, *see* [*id.* at 1–2], and state that the *Munderloh* court's order and memorandum denying a motion to dismiss "are adjudicative facts which the Court is readily able to ascertain from a reliable source, to wit, the public docket of the United States District Court for the District of Arizona," [*id.* at 4]; *see also* [*id.* (asking the Court to "take judicial notice of each of the eight court documents referenced above")].

Biegler opposes the Motion, arguing that contents of the filings in *Munderloh* do not themselves constitute "adjudicative facts" subject to judicial notice under Rule 201. [Doc. 52 at 3]. It asserts that while the Court may take judicial notice of the fact that the *Munderloh* documents were filed, the Court cannot take any of the documents' contents as true. [*Id.*]. In their reply brief, Plaintiffs maintain that they request judicial notice "of the contents of" the *Munderloh* documents, "not to prove the truth of the matters asserted

6

therein." [Doc. 53 at 1]. They argue that Defendant "has failed to demonstrate that the contents of the eight . . . court filings . . . should not be judicially noticed." [*Id.* at 2].

In light of Plaintiffs' clarification that they do not ask the Court to assume the truth of any statements or assertions in the *Munderloh* documents, the Court will **GRANT** the Motion for Judicial Notice. The Court takes judicial notice of the *Munderloh* docket entries referenced in Plaintiffs' Motion, but it does not assume the truth of their contents and does not assume that any of Plaintiffs' arguments in opposition to the Motion to Dismiss are correct. *Cf. Ellis-Hall Consultants, LLC v. Hofmann*, No. 2:12-cv-00771-DB, 2018 WL 11411607, at *1 (D. Utah Sept. 19, 2018) (denying motion for judicial notice "to the extent [it sought] judicial notice of the truth of the facts asserted within [court] records or to demonstrate that certain arguments or claims against [the d]efendants [were] true or established"). In addition, the Court does not consider any of the *Munderloh* documents or their contents incorporated by reference into any of Plaintiffs' filings, including its Response to the Motion to Dismiss. Such a practice would not only contravene the Court's Practice Standards, *see* NYW Civ. Practice Standard 10.1(c)(1) (limiting response briefs to 15 pages), but it would improperly discharge Plaintiffs' affirmative burden to demonstrate the Court's personal jurisdiction over Biegler in *this* case. Nor is this Court bound by the *Munderloh* court's personal jurisdiction order, which Plaintiffs claim is "based upon substantially the same issue and arguments raised in the current action." [Doc. 41 at 4]; *see also United States v. Rhodes*, 834 F. App'x 457, 462 (10th Cir. 2020) ("[D]istrict courts in this circuit are bound by [Tenth Circuit] decisions and those of the United States Supreme Court—they are not bound by decisions of other district courts, much less district courts in other circuits." (citation omitted)).

## II. The Motion to Dismiss

As mentioned above, exercising personal jurisdiction under Rule 4(k)(2) is proper when "(1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process." *Pandaw Am., Inc.*, 842 F. Supp. 2d at 1310.

Plaintiffs assert that the first requirement is met because their civil RICO claims and civil conspiracy claim arise under federal law. [Doc. 58 at 5]. Plaintiffs also assert that the Court has pendent jurisdiction over their state law claims. [*Id.* at 11]. Defendant does not dispute that at least some of Plaintiff's claims arise under federal law. *See* [Doc. 34 at 9–10; Doc. 59 at 2–6]. Accordingly, the Court finds that Plaintiffs have satisfied the first Rule 4(k)(2) element. *See Pandaw Am., Inc.*, 842 F. Supp. 2d at 1311.

"The second prong of the Rule 4(k)(2) test requires that the defendant not be subject to personal jurisdiction in any of the fifty states." *Id.* Plaintiffs rely on the Affidavit of Ingeborg Biegler (the "Biegler Affidavit"), *see* [Doc. 34-1], to support their assertion that Biegler is not subject to personal jurisdiction in any of the fifty states,[3] [Doc. 58 at 5]. "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). "If . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.*; *see also Compañia de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1283–84 (10th Cir.

---

[3] The Biegler Affidavit asserts that Biegler does not conduct any business operations within the borders of the United States and does not have, and has never had, any physical location in the United States. [Doc. 34-1 at ¶¶ 8–11].

8

2020) (adopting the Seventh Circuit's approach). Because Biegler does not identify any other state that would have personal jurisdiction over it, *see* [Doc. 34], the second Rule 4(k)(2) requirement is satisfied.

That leaves just the third requirement—that the exercise of personal jurisdiction over Defendant comports with due process. *Pandaw Am., Inc.*, 842 F. Supp. 2d at 1310. The due process analysis under Rule 4(k)(2) "is nearly identical to traditional personal jurisdiction analysis with one significant difference." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). Rather than focus on Defendant's contacts with the forum state (here, Colorado), the Court examines Defendant's contacts with the United States as a whole. *Id.*; *see also Synthes*, 563 F.3d at 1295 ("The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits."); *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 700 F. App'x 865, 868–71 (10th Cir. 2017) (deciding whether exercising jurisdiction under Rule 4(k)(2) would offend due process standards by undertaking specific personal jurisdiction analysis). Accordingly, the Court turns to traditional jurisdictional principles to determine whether the third Rule 4(k)(2) requirement is met. *See Archangel Diamond Corp.*, 75 F. Supp. 3d at 1366–71.

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Plaintiffs do not contend that Biegler is "essentially at home" in the United States or raise

9

any arguments using a general jurisdiction standard. *See generally* [Doc. 58]. Indeed, they appear to exclusively cite cases applying specific jurisdiction standards. *See, e.g.*, [*id.* at 5–6]. From this lack of argument, the Court infers that Plaintiffs do not take the position that Biegler is subject to the general personal jurisdiction of the United States. *See Compañia de Inversiones Mercantiles*, 970 F.3d at 1281 (limiting analysis to specific jurisdiction where "[n]o theory of general jurisdiction ha[d] been advanced"). But for purposes of completeness, the Court finds that Plaintiffs, by their lack of express argument, have not met their "high burden" to establish the Court's general jurisdiction over Biegler. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 94 (10th Cir. 2012). The Court's remaining analysis is limited to specific jurisdiction.

**B.    Specific Jurisdiction**

"[D]ue process requires constitutionally sufficient 'minimum contacts' between the defendant and the forum." *Compañia de Inversiones Mercantiles*, 970 F.3d at 1281. "The minimum contacts test for specific jurisdiction encompasses two distinct requirements." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). First, the defendant must have purposefully directed its activities at the forum, which for purposes of Rule 4(k)(2) is the United States as a whole rather than Colorado. *Pandaw Am., Inc.*, 842 F. Supp. 2d at 1311. This purposeful direction requirement "ensures that defendants will not be haled into court in foreign jurisdictions solely as a result of 'random, fortuitous, or attenuated contacts.'" *Dental Dynamics*, 946 F.3d at 1229 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the plaintiff's injuries must have arisen out of the defendant's forum-related activities. *Old Republic*, 877 F.3d at 904. This requirement "makes sure an adequate connection exists between the forum and the

underlying controversy." *Dental Dynamics*, 946 F.3d at 1229.

Plaintiffs' arguments—and importantly, their recitation of alleged facts—in support of jurisdiction are, respectfully, difficult to ascertain. They dedicate a few pages of their brief to general legal standards, but these statements of law are unaccompanied by any argument connecting this law to the facts of this case. *See* [Doc. 58 at 5–7]. Plaintiffs then suggest that Defendant "bears the burden to present a compelling case that it would be unreasonable for this Court to exercise personal jurisdiction," [*id.* at 7 (emphasis omitted)], and they go on to critique statements made in the Biegler Affidavit, *see* [*id.* at 7–8]. And Plaintiffs cursorily assert that "the Declarations of [Solace's former managing member] and Dr. Anderson . . . provide sufficient support for the exercise of federal RICO (Count I and II) and Conspiracy (Count V) jurisdiction over Biegler," without highlighting any particular portions of those declarations and without identifying which elements of the "minimum contacts" analysis the declarations purportedly support. [*Id.* at 10].

Plaintiffs' argument skips a necessary step. Plaintiffs have the initial burden of establishing a prima facie case of specific personal jurisdiction—i.e., that Biegler purposefully directed its activities at the United States and that Plaintiffs' injuries arose from Biegler's activities that were so directed. *See Compañia de Inversiones Mercantiles*, 970 F.3d at 1281 ("The plaintiff has the burden of proving that the court has jurisdiction." (quotation omitted); *see also id.* at 1289 (referencing "the plaintiff's showing on minimum contacts" (cleaned up)); *Colo. Cas. Ins. Co. v. Fu San Mach. Co.*, No. 16-cv-01244-RBJ, 2017 WL 3189879, at *4 (D. Colo. May 15, 2017) ("The burden of proof is on the plaintiff to establish minimum contacts." (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998))). It is only *after* Plaintiffs have satisfied this

11

requirement that the burden shifts to Defendant to demonstrate that the exercise of jurisdiction would be unreasonable. *Archangel Diamond Corp.*, 75 F. Supp. 3d at 1372; *see also Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1244–45 (D. Colo. 2010) ("Once the plaintiff establishes 'minimum contacts,' the defendant is responsible for demonstrating 'the presence of other considerations that render the exercise of jurisdiction unreasonable.'" (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

Plaintiffs have not met this initial burden to establish Defendant's minimum contacts with the United States.  First, they raise no meaningful argument specifically addressing either the purposeful direction requirement or the arising out of requirement. *See generally* [Doc. 58].  Indeed, Plaintiffs fail to even articulate a clear theory of purposeful direction.  *See* [*id.*]; *cf. Old Republic*, 877 F.3d at 905 (recognizing three separate frameworks used to determine whether the purposeful direction requirement is satisfied:  continuing relationships with forum residents; market exploitation of the forum; and harmful effects in the forum).  However, because Plaintiffs cite *Calder v. Jones*, 465 U.S. 783 (1984), and similar cases, *see* [Doc. 58 at 5–6], the Court assumes that Plaintiffs seek application of what is commonly known as the "*Calder* effects test," *see, e.g.*, *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 966 (10th Cir. 2022).[4]  "Purposeful

---

[4] Plaintiffs do not use the phrase "stream of commerce" anywhere in their Response. *See* [Doc. 58].  The Court thus concludes that Plaintiffs do not proceed under a stream-of-commerce theory.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (explaining that a defendant's placement of goods into the stream of commerce may indicate purposeful availment of the forum, so long as the defendant's activities manifest an intent to submit to the power of the sovereign); *see also Old Republic*, 877 F.3d at 909 n.21 (finding "no occasion to consider whether specific jurisdiction might be proper under the stream-of-commerce theory" where the plaintiff did not base its jurisdictional argument on the theory).

direction in this context has three elements: (1) an intentional action; (2) expressly aimed at the forum . . .; and (3) with knowledge that the brunt of the injury would be felt in the forum." *Dental Dynamics*, 946 F.3d at 1231 (recognizing that this test originates from *Calder*). "As the proponent of jurisdiction, plaintiffs must demonstrate each element of the effects test to satisfy the purposeful direction standard; that is, plaintiffs' failure to establish even one of the elements will doom their showing of purposeful direction." *Eighteen Seventy*, 32 F.4th at 967. Because they do not address any of these elements, let alone make any argument or identify any alleged facts in support of them, Plaintiffs have not met their burden to establish purposeful direction using this framework.[5]

Similarly, with respect to the requirement that Plaintiffs' injuries must arise out of Defendant's forum-related activities, Plaintiffs quickly cite two cases recognizing this component, *see* [Doc. 58 at 9], but they spend no time arguing that they have met this standard or pointing to facts alleged in the Complaint, *see generally* [*id*.]. They assert that, under Tenth Circuit law, the arising out of requirement is satisfied if "(1) the defendant

---

[5] In the opening section of their brief, Plaintiffs assert that "Defendants' agents" marketed the Stivax device in the United States, shipped Stivax devices to Plaintiffs, and provided training on coding and billing for implantation of the Stivax device. [Doc. 58 at 3]. "For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory. In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015). However, because Plaintiffs fail to articulate sufficient facts for a factfinder to conclude that an agency or alter ego relationship exists between Biegler and these third-party "agents" and make no argument that the contacts of Biegler's purported agents are properly imputed onto Biegler, their passing mention of the agents' alleged actions are insufficient to demonstrate Biegler's minimum contacts with the United States. *See Fitbit, Inc. v. Koninklijke Philips N.V.*, 336 F.R.D. 574, 585 (N.D. Cal. 2020) (finding that the plaintiff failed to establish personal jurisdiction based on third-party contacts because the plaintiff "ha[d] not put forward a reason—whether by an agency or alter ego theory—to impute [the third party's] contacts to [the defendant]").

has purposefully directed activity to market a product or service at residents of the forum; and (2) the plaintiff's claim arises from essentially the same type of activity, even if the activity that gave rise to the claim was not directed at forum residents." [*Id.* at 6 (emphasis omitted)]. But Plaintiffs do not attempt to connect this general statement of law to the facts and allegations in this case in any meaningful way. *See* [*id.*]. "[P]erfunctory or cursory reference to issues unaccompanied by some effort at developed argument are inadequate to warrant consideration." *United States v. Jones*, 768 F.3d 1096, 1105 (10th Cir. 2014). Indeed, Plaintiffs do not cite or discuss *any* cases that they claim are analogous to this case. *See* [Doc. 58]. They mention *Munderloh*, but only in passing. *See* [*id.* at 9]. And in any event, the Court is not bound by the *Munderloh* decision and must determine its own jurisdiction over Biegler.[6] *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quotation omitted)).

"Unlike subject matter jurisdiction, [courts] are not obliged to independently assess [their] jurisdiction over persons." *Grynberg*, 490 F. App'x at 92 n.4. The Court cannot create arguments for or conduct legal research on behalf of Plaintiffs, who have been

---

[6] Moreover, the *Munderloh* court explained that, for the "arising out of" requirement, "[t]he Ninth Circuit 'relies on a "but for" test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction.'" *Munderloh v. Biegler GmbH*, No. 21-cv-08004-PCT-GMS, 2022 WL 901408, at *4 (D. Ariz. Mar. 28, 2022) (alteration omitted) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)). But Plaintiffs appear to advocate for a "proximate cause" standard in their brief, *see* [Doc. 58 at 9], and this standard is "considerably more restrictive" than the but-for causation standard, *Compañia de Inversiones Mercantiles*, 970 F.3d at 1285 (alteration omitted). Plaintiffs raise no argument explaining *why* this "considerably more restrictive" standard is met here. *See generally* [Doc. 58].

14

represented by counsel since the inception of this case. *United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015). "[C]ourts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011) (quotation omitted).

It is well settled that conclusory and undeveloped arguments are insufficient to present the issue to the Court for review. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (declining to consider "unsupported and inadequately briefed" argument that was "vague, confusing, [and] conclusory"). By failing to articulate a legal theory with respect to personal jurisdiction and provide arguments in support of that theory, Plaintiffs simply have not met their affirmative burden of demonstrating the Court's personal jurisdiction over Biegler. *Cf. Water for Com. Fund Mgmt., LLC v. PSK Collective, LLC*, No. 2:23-cv-02330-HLT-BGS, 2024 WL 1676788, at *3 n.3 (D. Kan. Apr. 18, 2024) (recognizing that "the burden is on Plaintiff to establish that personal jurisdiction exists" and "evaluat[ing] the issue based only on the arguments presented). Accordingly, the Motion to Dismiss is **GRANTED**, and Plaintiffs' claims against Biegler are **DISMISSED without prejudice** for lack of personal jurisdiction.

### III. Order to Show Cause

As mentioned above, Plaintiffs obtained a Clerk's Entry of Default against Solace on July 25, 2024. [Doc. 21]. Over a year has passed since default was entered, and Plaintiffs have not moved for default judgment against Solace. Without some affirmative action from Plaintiffs, their claims against Solace will remain at a standstill.

"A district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules."

*Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). "A judicial officer may issue an order to show cause why a case should not be dismissed for failure to prosecute." D.C.COLO.LCivR 41.1 "If good cause is not shown, a district judge . . . may enter an order of dismissal with or without prejudice." *Id.* It is **ORDERED** that, no later than **August 29, 2025**, Plaintiffs shall show cause why their claims against Solace should not be dismissed without prejudice for failure to prosecute. *See Williams v. Bond*, No. 20-cv-02123-JAR-ADM, 2021 WL 11572311, at *2 (D. Kan. Apr. 5, 2021) (recommending dismissal for failure to prosecute where plaintiff failed to seek default judgment against defaulted defendants for five months), *report and recommendation adopted*, 2021 WL 11571028 (D. Kan. Apr. 21, 2021); *Pece v. Beaudry*, No. 23-cv-01090-TC-GEB, 2024 WL 3360354, at *2 (D. Kan. June 28, 2024) (recommending dismissal for failure to prosecute due to the plaintiff's failure to move for default judgment for over a year), *report and recommendation adopted*, Dkt. No. 12 (D. Kan. July 16, 2024).

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendant Biegler GmbH's Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(2), for Forum Non Conveniens, and Under Fed. R. Civ. P. 12(b)(6) [Doc. 34] is **GRANTED**;

(2) Plaintiffs' claims against Biegler are **DISMISSED without prejudice** for lack of personal jurisdiction;

(3) Plaintiffs' Request for Judicial Notice of Adjudicative Facts [Doc. 41] is **GRANTED**; and

(4) On or before **August 29, 2025**, Plaintiffs shall **SHOW CAUSE** why their

claims against Solace should not be dismissed without prejudice for failure to prosecute.

DATED: August 8, 2025

BY THE COURT:

_____
Nina Y. Wang
United States District Judge