**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-01603-NYW-SBP

JAMES C. ANDERSON, and
ANDERSON PODIATRY CENTER, P.C.,

Plaintiffs,

v.

BIEGLER GMBH, and
SOLACE ADVANCEMENT, LLC

Defendants.

---

**ORDER ON MOTION TO DISMISS**

---

This matter is before the Court on the Defendant Biegler GmbH's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion" or "Motion to Dismiss"). [Doc. 80]. For the reasons set forth below, the Motion to Dismiss is respectfully **GRANTED**.

**BACKGROUND**[1]

Plaintiff James C. Anderson ("Dr. Anderson") is a physician practicing in Fort Collins, Colorado at Anderson Podiatry Center, P.C. [Doc. 71 at ¶¶ 33–34]. Defendant Biegler GmbH ("Defendant" or "Biegler") is an Austrian corporation with its principal place of business in Austria. [*Id.* at ¶ 36].

Plaintiffs allege that Biegler "was engaged in the manufacturing, sale, distribution

[1] The Court takes the following well-pleaded factual allegations from the First Amended Complaint and Demand for Jury Trial (the "Amended Complaint"), [Doc. 71], and accepts them as true for purposes of the Motion to Dismiss, *see XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020).

and marketing" of a medical device called the "Stivax System," also referenced as the "Stivax device." [*Id.* at ¶¶ 2, 36]. The Stivax device is "a single use, battery-powered, electrical nerve stimulator which is used for the stimulation of the vagus nerve via the ear." [*Id.* at ¶ 3 (quotation omitted)]. Plaintiffs allege that Biegler and co-Defendant Solace Advancement, LLC ("Solace") erroneously promoted the Stivax device as an implantable non-narcotic pain management medical device that was reimbursable under certain Medicare codes. [*Id.* at ¶¶ 8–9]. According to Plaintiffs, "Defendants, their agents[,] and subagents instructed Dr. Anderson and Anderson Podiatry how to bill Medicare and other government healthcare payors for the Stivax device using codes that Defendants, their agents[,] and subagents . . . knew to be improper for the Stivax device." [*Id.* at ¶ 11]. Specifically, Plaintiffs allege, upon information and belief, that Defendants engaged with a number of other non-parties to create the "Stivax System Enterprise":

> Biegler manufactured the device; Solace . . . imported and contracted with [non-party] Doc Solutions, its agent NexMed and NexMed's subagent Nightingale [International, LLC] to distribute the Stivax device utilizing the U.S. Postal Service and/or private and/or commercial interstate carriers; [non-party] NexMed fulfilled orders submitted by medical providers; and [non-parties] [Jack] Haga, Nightingale, [John C.] Dawkins and [A. Scott] Burgess utilized the U.S. Mail, private and/or commercial interstate carriers and emails transmitted by wire to continuously misrepresent the Stivax device through fraudulent misrepresentations during internet and/or in person presentations, training, education, and instructions to Plaintiffs and the named healthcare providers in California and other States in the U.S.A.

[*Id.* at ¶ 91].

Plaintiffs "purchased more than one hundred Stivax devices from the Stivax System Enterprise" and submitted claims for reimbursement to Medicare "using Stivax System Enterprise recommended [billing] codes" for implantable devices. [*Id.* at ¶¶ 91, 95]. "Medicare claim[ed] at least $276,162.26 in overpayments made under" the

erroneous codes. [*Id.* at ¶ 95].

Plaintiffs initiated this action on June 7, 2024. *See* [Doc. 1]. In August 2025, the Court granted Biegler's motion to dismiss Plaintiffs' claims for lack of personal jurisdiction. *See* [Doc. 63].[2] Thereafter, Plaintiffs filed an unopposed motion to amend their complaint, *see* [Doc. 66], which the Court granted, *see* [Doc. 70]. Plaintiffs filed the operative Amended Complaint on October 9, 2025. [Doc. 71]. They assert six claims, each against both Defendants: (1) a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c) ("Claim One"), [Doc. 71 at ¶¶ 126–36]; (2) a civil RICO conspiracy claim ("Claim Two"), [*id.* at ¶¶ 137–43]; (3) a fraudulent misrepresentation claim ("Claim Three"), [*id.* at ¶¶ 144–50]; (4) a fraudulent concealment claim ("Claim Four"), [*id.* at ¶¶ 151–56]; (5) a common law civil conspiracy claim ("Claim Five"), [*id.* at ¶¶ 157–61]; and (6) a claim under the Colorado Consumer Protection Act ("CCPA") ("Claim Six"), [*id.* at ¶¶ 162–73]. Biegler moves to dismiss Plaintiffs' claims for lack of personal jurisdiction, or alternatively, for failure to state a claim. [Doc. 80].

## LEGAL STANDARDS

### I. Personal Jurisdiction

Personal jurisdiction is "an essential element of the jurisdiction of a district court," and without it, "the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emps. Reinsurance Corp. v. Bryant*,

[2] The Supreme Court's decision in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), which is discussed in detail below, was issued a few weeks before this Court's ruling on Biegler's first motion to dismiss. The Parties' briefing on that motion was complete before the *Fuld* was decided, so the Parties did not discuss that case in their personal jurisdiction arguments, *see* [Doc. 34; Doc. 58; Doc. 59], but they do raise arguments about *Fuld*'s applicability in their instant briefing, *see* [Doc. 80; Doc. 82].

299 U.S. 374, 382 (1937)). The plaintiff bears the burden of demonstrating a court's personal jurisdiction over a defendant. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).[3]

Relevant here, Rule 4(k)(2) of the Federal Rules of Civil Procedures "serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009). The rule provides that

> [f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction over the defendant would be consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). In other words, a court may exercise personal jurisdiction over a foreign defendant under Rule 4(k)(2) if three requirements are met: "(1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process." *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1310 (D. Colo. 2012). Personal jurisdiction under Rule 4(k)(2) must comply with the "constitutional limitations imposed by the *Fifth* Amendment's Due Process Clause, rather

---

[3] There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the lawsuit arises out of or relates to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). General jurisdiction "permits a court to adjudicate any cause of action against" the defendant, "wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Here, Plaintiffs argue only that the Court has specific personal jurisdiction over Biegler, *see* [Doc. 82 at 2], and the Court's analysis is limited accordingly.

than the Fourteenth's." *Rodriguez v. Imperial Brands, PLC.*, 182 F.4th 1333, 1341 (11th Cir. 2026).

When a court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). In its analysis, the Court considers the plaintiff's allegations, as well as "affidavits and other written materials submitted by the parties." *Zebrasky v. Montgomery Mut. Ins. Co.*, 689 F. Supp. 3d 968, 970 (D. Colo. 2023) (quotation omitted). The Court accepts the plaintiff's well-pleaded allegations as true "unless they are controverted by sworn statements." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020); *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011). The Court does not take conclusory or speculative allegations as true. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008).

**II. Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

### I. Personal Jurisdiction

Biegler's primary argument is that the Court lacks personal jurisdiction over it, so Plaintiffs' claims should be dismissed under Rule 12(b)(2). [Doc. 80 at 5–13]. As mentioned above, exercising personal jurisdiction under Rule 4(k)(2) is proper when "(1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process." *Pandaw Am., Inc.*, 842 F. Supp. 2d at 1310. Biegler argues, in essence, that the third requirement cannot be satisfied. *See* [Doc. 80 at 5–13]. But the Parties disagree about the specific legal framework that applies to the third requirement.

For years, "whether the Fifth Amendment imposes the same restrictions [as the Fourteenth Amendment] on the exercise of personal jurisdiction by a federal court" was an "open . . . question." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 269 (2017). Lower courts, therefore, often applied the Fourteenth Amendment's "minimum contacts" framework even where the exercise of personal jurisdiction was governed by the Fifth Amendment. *See, e.g.*, *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1208–09 & n.4 (10th Cir. 2020) (applying minimum-contacts analysis to Rule 4(k)(2) jurisdiction when the parties "[did] not argue that any meaningful distinction exists between the Fifth and Fourteenth Amendment due process standards"); *GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 808 F. App'x 655, 661, 664 n.3 (10th Cir. 2020) (same); *cf. Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (under the Fourteenth

Amendment, the defendant must have "minimum contacts" with the forum, such that exercising jurisdiction would not "offend traditional notions of fair play and substantial justice").

But recently, the Supreme Court "made . . . absolutely clear" that "[t]he Fifth Amendment Due Process Clause 'does *not* incorporate the Fourteenth Amendment minimum contacts standard.'" *Rodriguez*, 182 F.4th at 1342 (quoting *Fuld v. Palestine Liberation Organization*, 606 U.S. 1, 23 (2025)). In *Fuld*, the Supreme Court was tasked with determining whether the exercise of personal jurisdiction under the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA") complied with the Fifth Amendment. 606 U.S. at 5–6. In conducting its due process analysis, the Supreme Court "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment," holding instead that "the Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.* at 16. But although the *Fuld* Court determined "that the Fifth Amendment does not impose the same jurisdictional limitations as the Fourteenth," it "[did] not purport to delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U. S. courts." *Id.* at 18.

Defendant argues that, despite *Fuld*, the Fourteenth Amendment's minimum contacts test should guide this Court's analysis here. First, it highlights that *Fuld* does not discuss Rule 4(k)(2) or expressly hold that the minimum-contacts test is inapplicable to Rule 4(k)(2). [Doc. 80 at 5]. Instead, Defendant argues, the *Fuld* decision is limited to jurisdiction authorized by the PSJVTA, which—unlike RICO—permits personal

jurisdiction in only narrow circumstances. [*Id.* at 7]. It also contends that Plaintiffs' claims "do not implicate important foreign policy concerns" present in *Fuld*. [*Id.* at 8]. Plaintiffs respond that *Fuld*'s holding "unmistakably applies to a Rule 4(k)(2) analysis." [Doc. 82 at 11]. The Tenth Circuit has not yet weighed in on the reach of *Fuld* or whether it applies to determining personal jurisdiction under Rule 4(k)(2).

The Court is respectfully unpersuaded that *Fuld* should be read as narrowly as Defendant suggests. Although *Fuld* did not expressly discuss Rule 4(k)(2), neither did it "limit its holding exclusively to Rule 4(k)(1)(C) cases" (i.e., cases where service of process authorized by statute is effective to establish personal jurisdiction)[4] or cases asserted under the PSJVTA. *Rodriguez*, 182 F.4th at 1345. As the Eleventh Circuit recently explained, although the *Fuld* Court stated that "[a]ny difference between the Fifth and Fourteenth Amendments is . . . implicated in only a subset of federal cases, such as those in which personal jurisdiction is . . . 'authorized by a federal statute,'" *Fuld*, 606 U.S. at 11 (quoting Fed. R. Civ. P. 4(k)(1)(C)), the Supreme Court's use of the phrase "such as" demonstrates that Rule 4(k)(1)(C) is simply one example of cases "in which the difference between the Fifth and Fourteenth Amendment matters," *Rodriguez*, 182 F.4th at 1345–46. In the Eleventh Circuit's view, "Rule 4(k)(2) cases also fall within that subset." *Id.* at 1346.

Furthermore, the Supreme Court's holding in *Fuld* was framed broadly: "the Due Process Clause of the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard." *Fuld*, 606 U.S. at 23; *see also id.* at 18 ("[W]e hold today

---

[4] Plaintiffs do not argue that personal jurisdiction is appropriate in this case based on RICO's service-of-process provisions or Rule 4(k)(1)(C). *See* [Doc. 82]; *see also* 18 U.S.C. § 1965.

that the Fifth Amendment does not impose the same jurisdictional limitations as the Fourteenth."); *id.* at 16 ("[T]he Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority."). "Because *Fuld* interpreted the Fifth Amendment Due Process Clause, *Fuld* applies squarely to cases, like this one, in which the plaintiffs assert that they established personal jurisdiction via Rule 4(k)(2)." *Rodriguez*, 182 F.4th at 1345.

As for Defendant's arguments about the unique nature of the PSJVTA and its related foreign policy considerations, *see* [Doc. 80 at 7–8], the Court agrees with Defendant that *Fuld* is distinguishable factually from the circumstances here. But that does not mean *Fuld*'s broad holding can be ignored. To be sure, the *Fuld* court's reasonableness analysis may not be a perfect analog to the due process analysis required in this case. *See Gligorov v. Nation of Brunei*, --- F. 4th ----, 2026 WL 2276372, at *8 (D.C. Cir. Aug. 7, 2026) ("Because personal jurisdiction here flows, if at all, from [Rule 4(k)(2)] rather than a statute, this case is an odd fit for the Supreme Court's analysis in *Fuld*. As a court-promulgated rule, Rule 4(k)(2) does not communicate any substantive federal policy or congressional interest in subjecting defendants to federal jurisdiction."); *see also Fuld*, 606 U.S. at 24–25 (discussing why jurisdiction under the PSJVTA was reasonable). But again, the *Fuld* decision was not cabined to cases arising under the PSJVTA, and the overarching reasonableness analysis applied in Fuld can be applied to cases involving other bases for personal jurisdiction, too. *See id.* at 24 (whether the exercise of personal jurisdiction is reasonable will "depend in each case 'on an evaluation of several factors,' including 'the burden on the defendant, the interests of the forum State,

and the plaintiff's interest in obtaining relief'" (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113, (1987))).

"[T]he *Fuld* Court clearly decoupled the Fifth and Fourteenth Amendments' personal-jurisdiction analyses. Beyond that, the Court's opinion is less definitive." *Rodriguez*, 182 F.4th at 1343. Indeed, as mentioned above, the *Fuld* Court did not "delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into [federal] courts." 606 U.S. at 18. Nor did it "determine whether" a reasonableness or fairness analysis "is constitutionally required" under the Fifth Amendment. *Id.* at 23. But the Tenth Circuit *has* ruled that a fairness or reasonableness inquiry is required under the Fifth Amendment, albeit in a case where jurisdiction was based on nationwide service of process. *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211–12 (10th Cir. 2000) ("[W]e hold that in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant.").

Without clear guidance about Fifth Amendment due process requirements post-*Fuld*, lower courts are "left [with] important issues . . . to decide." *King v. Bon Charge*, 823 F. Supp. 3d 508, 518 (D. Del. 2025); *see also POM Grp. Inc. v. Schedule A Defs.*, No. 2:25-cv-01909, 2026 WL 1027266, at *4 (W.D. Pa. Apr. 16, 2026) ("In the absence of a concrete test from the Supreme Court, it is left to the lower courts to decide how to apply the Fifth Amendment due process test in a specific case."); S*ociedad Concesionaria Metropolitana Du Salud S.A. v. Webuild S.P.A.*, No. 3:24-cv-02043-SVN, 2026 WL 84524, at *8 (D. Conn. Jan. 12, 2026) (recognizing "significant uncertainty about what test applies

under the Fifth Amendment"). In *Rodriguez*, the Eleventh Circuit's reasonable analysis involved the three factors laid out in *Fuld*—the burden on the defendant, the interests of the forum, and the plaintiff's interest in obtaining relief. 182 F.4th at 1347–50; *see also X Corp. v. World Fed'n of Advertisers*, 826 F. Supp. 3d 772, 795–96 (N.D. Tex. 2026) (doing the same). In *King*, Judge Bibas, sitting by designation, took a "cautious" approach and "appl[ied] pre-*Fuld* case law to conclude that the defendant had minimum contacts with the United States. *See* 823 F. Supp. 3d at 518 (because "asserting personal jurisdiction over [the defendant] would be constitutional under the more stringent standard *Fuld* rejected," concluding that "asserting personal jurisdiction [was] also constitutional under *Fuld*"). Other courts have taken a similar approach. *See, e.g.*, *POM Grp. Inc.*, 2026 WL 1027266, at *4; *Saul v. Valnet Inc.*, No. 1:25-cv-12236-JEK, 2026 WL 1878312, at *3 (D. Mass. June 30, 2026).

Many years before *Fuld*, the Tenth Circuit held in *Peay* that, to determine whether personal jurisdiction complies with Fifth Amendment due process requirements, the *defendant* "must . . . demonstrate that [its] liberty interests actually have been infringed." *Peay*, 205 F.3d at 1212 (quotation omitted).[5] "The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [it] unfairly is at a severe disadvantage in comparison to [its] opponent.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). The *Peay* court identified five factors relevant to determining whether the defendant has met this burden:

(1) the extent of the defendant's contacts with the place where the action

[5] *Peay* was an ERISA case in which the plaintiff invoked the statute's nationwide service of process provision as a basis for personal jurisdiction. *See* 205 F.3d at 1209.

> was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

*Id.* These factors overlap, to an extent, with the fairness factors identified in *Fuld*. And because it is bound to apply the precedent of the Supreme Court and the Tenth Circuit, the Court finds that an appropriate, cautious approach is to consider all of the *Fuld* and *Peay* factors together—to the extent they are addressed by the Parties—in determining whether Defendant has demonstrated that exercising personal jurisdiction would infringe its liberty interests.[6]

***The Burden on or Inconvenience to Biegler.*** First, the Court considers the burden on or inconvenience to Biegler that would arise if Biegler is required to litigate this case in the United States. *Fuld*, 606 U.S. at 24; *Peay*, 205 F.3d at 1212. In so doing, the Court also considers the probable situs of discovery proceedings, *Peay*, 205 F.3d at 1212, as well as Defendant's contacts with the forum, *id.*; *see also Rodriguez*, 182 F.4th at

---

[6] Defendant does not expressly address the *Peay* factors. *See* [Doc. 80; Doc. 84]. Defendant notes that *Peay* involved a domestic defendant and argues that "it remains unclear how a court would analyze a *foreign* defendant's burden, or how such a burden would be analyzed in the context of Rule 4(k)(2) jurisdiction." [Doc. 84 at 8]. But nothing in *Peay* suggests to this Court that the Tenth Circuit intended to limit its analysis to domestic but out-of-state defendants. The Court is bound to follow the *Peay* decision absent further clarification from the Tenth Circuit post-*Fuld*. Furthermore, although this Court cannot act as a party's advocate or raise arguments on Defendant's behalf, *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), the Court observes that some of Defendant's arguments can be construed as addressing the fairness factors in *Fuld* or *Peay*, *see, e.g.*, [Doc. 80 at 12–13]. The Court thus addresses the *Peay* and *Fuld* factors to the extent they are addressed by the Parties.

1348–49 (considering the defendant's contacts with the United States in its analysis concerning the burden on the defendant).

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal*, 480 U.S. at 114. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id.* at 115 (quotation omitted).

Defendant argues that "the burdens on [it] are significant: Biegler is headquartered in rural Austria, and its principals' native language is German." [Doc. 80 at 13]. And Biegler's President and CEO, Ingeborg Biegler, has submitted an affidavit averring that "Biegler does not have any physical business office or location within the [borders] of the United States" and "Biegler does not conduct any business operations within the borders of the United States." [Doc. 80-1 at ¶¶ 8–9]. Indeed, exercising personal jurisdiction in this case would require an Austrian company to dispatch its officers "across an ocean . . . to defend this suit in a foreign nation's judicial system," *Rodriguez*, 182 F.4th at 1348, which puts a significant burden on Biegler, *Asahi Metal*, 480 U.S. at 114; *see also TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1293 (10th Cir. 2007) (recognizing "some burden" of European company litigating in Kansas); *Cascade Fund, LLLP v. Absolute Cap. Mgmt. Holdings Ltd.*, 707 F. Supp. 2d 1130, 1140–41 (D. Colo.

2010) (for foreign company with no employees or offices in the United States, the burden of litigating in the United States would be "significant"); *Rodriguez*, 182 F.4th at 1348, 1350–51 (finding "severe" burden on foreign company based on, among other factors, the company's "lack[] of a strong presence in this country").

In their Response, Plaintiffs contend that the United States is not an "unfair forum" because Biegler "inserted itself into the United States" by "going through the FDA application and approval process" and by "enter[ing] into contractual relations for the sale of their medical devices within the United States." [Doc. 82 at 10 (citing Doc. 71 at ¶¶ 68–70, 75)]. But Ingeborg Biegler's affidavit—which is uncontested—suggests very minimal contact between Biegler and the United States: "Once the Stivax device product reached Solace Advancement, LLC in Michigan, Biegler had no direction or control over where or how the product was subsequently marketed, distributed, transferred and/or sold." [Doc. 80-1 at ¶ 22]; *see also Shrader*, 633 F.3d at 1248 (uncontested affidavits "carry the issue" in personal jurisdiction analysis). The allegations in the Amended Complaint do not suggest that *Biegler itself* had any meaningful *direct* contact with the United States, and the Court is not persuaded that its minimal contacts have much weight here.

Plaintiffs also note that "Biegler previously appeared and defended itself [against a lawsuit filed] in the United States District Court for the District of Arizona," but they raise no argument explaining this fact's significance. [Doc. 82 at 10].[7] Absent any meaningful

[7] The Court takes judicial notice of the fact that Biegler moved to dismiss that federal case for lack of personal jurisdiction and for failure to state a claim and the motion was denied. *See Munderloh v. Biegler GMBH*, No. 3:21-cv-08004-GMS, Def.'s Mot. to Dismiss, ECF No. 33 (D. Ariz. July 15, 2021); *Munderloh v. Biegler GMBH*, No. 3:21-cv-08004-GMS, Order on Def.'s Mot. to Dismiss, ECF No. 52 (D. Ariz. Mar. 23, 2022); *see also St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (courts may take judicial notice "of proceedings in other courts").

argument from Plaintiffs, the Court cannot conclude that this does anything to diminish the fact that Biegler has no established presence in the United States.

Plaintiffs also argue that "[t]he probable situs of discovery will be in the United States," as "Ingeborg Biegler's deposition is most probably going to occur by Zoom, whole [written discovery] will be exchanged electronically." [*Id.*]. Defendant does not dispute this, but it argues that significant burdens still exist even if much of the discovery can be conducted electronically. [Doc. 84 at 9]. True, electronic discovery procedures would minimize the litigation burden on Biegler. *See TH Agric. & Nutrition*, 488 F.3d at 1293 (recognizing that "modern transportation and communications" have lessened the burdens of litigating in a foreign jurisdiction (quoting *Burger King*, 471 U.S. at 474)). But Biegler officers would still be required to travel from Austria to the United States for trial, and perhaps pretrial hearings as well. Therefore, the Court finds that there remains a fairly significant burden on Biegler. *Asahi Metal*, 480 U.S. at 114.

***The United States's Interests.*** Next, the Court considers the interests of the forum, the United States. *Fuld*, 606 U.S. at 24; *Rodriguez*, 182 F.4th at 1347. Biegler argues that "[t]he interests of the forum are slight, since the alleged wrongful conduct was committed by domestic entities whom Plaintiffs are free to pursue." [Doc. 80 at 13]. It asserts that the allegations in this case do not assert that Biegler "create[d] a defective or dangerous product that entered the forum and injured someone" and that its alleged conduct "does not invoke social policy considerations." [*Id.*]. Plaintiffs do not appear to raise any argument concerning the United States's interest in litigating this dispute. *See* [Doc. 82].

Defendant's argument about the identity of the actual wrongful actor(s) goes to the

substance of Plaintiffs' claims and the sufficiency of their allegations, and the Court declines to rely on it in its personal jurisdiction analysis. The Court finds that the United States has at least some interest in adjudicating a dispute over the alleged violation of federal law that allegedly harmed United States-based Plaintiffs. *Cf. Fuld*, 606 U.S. at 20 ("The Federal Government, relatedly, has a strong interest in permitting American victims of international terror to pursue justice in domestic courts."). But absent meaningful argument from either side, the Court cannot readily ascertain the strength of the United States's interest. *Cf. Gligorov*, 2026 WL 2276372, at *9 (finding no United States sovereign interest in adjudicating RICO claims where there the plaintiff did not explain how any alleged violations had "any impact on th[e] interests of the United States, its residents, or its property").

***Plaintiffs' Interests in Obtaining Relief.*** Neither Defendant nor Plaintiffs address this factor. [Doc. 80; Doc. 82]. Though it is "clear" that Plaintiffs have an interest in vindicating their legal rights, *see Rodriguez*, 182 F.4th at 1347, this factor does not provide much weight to the Court's analysis without meaningful argument from the Parties.

***Judicial Economy and the Nature of Biegler's Activities Beyond Austria.*** Finally, *Peay* instructs the Court to consider judicial economy and "the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of [its country]." 205 F.3d at 1212. Neither Party meaningfully addresses these factors. *See* [Doc. 80]; *see also* [Doc. 82 at 10 (arguing that "[t]here is nothing in the record indicating that considerations of judicial economy would make the United States an unfair forum")].

Considering all of these factors together, the Court is respectfully unable to conclude that Biegler has met its burden to show "that [its] liberty interests actually have been infringed" by litigating in this forum. *Peay*, 205 F.3d at 1212 (quotation omitted). To do so, Defendant must show that litigating this case in the United States would "make litigation so gravely difficult and inconvenient that [it] unfairly is at a severe disadvantage in comparison to [its] opponent." *Id.* (quoting *Burger King*, 471 U.S. at 478). While the Court acknowledges the significant burden of a foreign defendant litigating in the United States, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* (quotation omitted). And because Defendant does not meaningfully address the other relevant factors, the Court cannot conclude that the burdens on Defendant outweigh the other relevant factors. Accordingly, the Court declines to dismiss this case on personal jurisdiction grounds.

## II. Failure to State a Claim

In the alternative, Biegler argues that Plaintiffs' claims should be dismissed under Rule 12(b)(6). [Doc. 80 at 13–16].

### A. RICO Claims

Plaintiffs assert two claims pursuant to RICO: one alleging a civil violation of the statute and the other alleging a conspiracy to commit a civil violation of the statute. [Doc. 71 at ¶¶ 126–43]. Specifically, Plaintiffs allege that

> Defendants and their . . . agents participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C §§ 1961(1)(b), 1961(5), and 1962(c), as follows:
>
> a. Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341, detailed herein;
>
> b. Multiple acts of wire fraud, in violation of 18 U.S.C. § 1343, detailed

herein; and

c. Multiple instances of interstate transport of money converted or fraudulent obtained, in violation of 18 U.S.C. § 2314, detailed herein.

[*Id.* at ¶ 133].

It is unlawful to "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). RICO provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of § 1962. *See id.* § 1964(c). To state a claim for a civil RICO violation, Plaintiffs must allege facts establishing "(1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006). "Racketeering activity" includes "any act which is indictable" under certain federal statutes, including mail fraud, wire fraud, and the transportation of money fraudulently obtained. 18 U.S.C. § 1961(1).

Under Rule 9, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Tenth Circuit has held that "Rule 9(b) requires particularity in pleading RICO mail and wire fraud." *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989). Similarly, courts have concluded that Rule 9(b) applies where the alleged predicate act is the transportation of money obtained by fraud. See *Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*, No. 08-cv-04714-JLL, 2015 WL 892750, at *8 (D.N.J. Feb. 27, 2015); *Ocoro v. Montelongo*, No. 5:16-cv-01278-RCL, 2018 WL 3040582, at *5 (W.D. Tex. June 19, 2018). This means that, to state a claim based on mail or wire fraud or based on the transportation of money

obtained by fraud, Plaintiffs must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (quotation omitted).

Biegler argues that Plaintiffs fail to state a civil RICO claim because they do not identify with particularity the time, place, or contents of the alleged false representations or the identity of the party making the misrepresentations. [Doc. 80 at 14]. It contends generally that Plaintiffs' allegations are too vague and conclusory to state a claim under RICO. *See* [*id.*]. Plaintiffs do not directly respond to these arguments. Instead, they cursorily assert that "Defendants [sic] participation in the Stivax System Enterprise is set forth in paragraphs 1 – 14, 24.a – 24.j, 28, 30, 36 – 43, 61 – 74, 76, 71 – 85, 86–89 [on pages 27– 30], duplicate number 86–89 [on page 31], 90–136 and Exhibit 14 of the Am. Comp." [Doc. 82 at 13 (brackets in original)]. They similarly assert:

> Paragraphs 24.a, 24.b, 24.c, 24.g, 24.h, 24.i, 24.j, 28, 84, 86-89 [on pages 27-30], duplicate number 86-89 [on page 31], 90-136 and Exhibit 14 to the Am. Comp. allege sufficient ultimate facts demonstrating the specific commission of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and interstate transportation of money fraudulently obtained in violation of 18 U.S.C. § 2314 to support Count I of the Amended Complaint.

[*Id.* at 14 (brackets in original)].

It should go without saying that to properly defend against a motion to dismiss, the non-moving parties must raise legal arguments explaining why their allegations are sufficient to state a claim; simply copying and pasting allegations from the pleading into a response brief is insufficient to convince the Court that dismissal is unwarranted. *Cf. Westenbroek v. Fraternity*, No. 23-cv-00051-ABJ, 2023 WL 5533307, at *18 n.67 (D.

Wyo. Aug. 25, 2023) (advising the plaintiffs that they "should not copy and paste their complaint in lieu of elaboration or legal research that assists the Court in disentangling their claims"); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as [a] litigant's attorney in constructing arguments and searching the record."). Plaintiffs' reference to over 100 allegations in their Amended Complaint, without any specific argument explaining why any particular allegations meet the pleading requirements for RICO claims under Rule 9(b), does little to demonstrate that dismissal would be inappropriate.

"[I]n examining a complaint under Rule 12(b)(6), [the Court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable," understanding that it is Plaintiffs' "burden to "nudge [their] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Court agrees that Plaintiffs' allegations are insufficient to state a RICO claim.

"To support the mail and wire fraud allegations, [Plaintiffs] must plausibly allege 'the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises,' and that [Biegler] communicated, or caused communications to occur, through the U.S. mail or interstate wires to execute that fraudulent scheme." *George*, 833 F.3d at 1254 (quoting *Tal*, 453 F.3d at 1263). Plaintiffs allege that

> For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants and their above-named agents and subagents, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered to Plaintiffs by the U.S. Postal Service and/or Defendants and

> their above-named agents and subagents, in violation of 18 U.S.C. § 1341, intentionally received matter and things from the Postal Service, including, but not limited to, the checks set forth in Composite Exhibit 14 attached hereto, which checks issued by Plaintiffs in payment for Stivax devices ordered and delivered to Plaintiffs during the years 2018 and 2019.

[Doc. 71 at ¶ 120]; *see also* [*id.* at ¶ 121 (asserting a similar allegation that "Defendants and their . . . agents and subagents" . . . "transmitted and received by interstate bank wire and through other interstate electronic media[] matter and things," without identifying when those alleged transmissions occurred)]. Plaintiffs' vague allegations concerning the actions of "Defendants and their . . . agents and subagents" involving "matter and things" do not meet the requirements of Rule 9(b). *George*, 833 F.3d at 1254; *cf. Dalton v. City of Las Vegas*, 282 F. App'x 652, 655 (10th Cir. 2008) ("Simply listing the litany of offenses allegedly committed by defendants, without any specification as to which acts . . . qualify as § 1961 predicate acts" is insufficient to state a claim.).[8] And the Amended Complaint contains no specific allegations about Biegler allegedly transporting money obtained by fraud, either. *See* [Doc. 71 at ¶¶ 14, 66, 120–21, 125, 142 (focusing on mail fraud and wire fraud and not addressing a predicate act under 18 U.S.C. § 2314)].

The Court concludes that Plaintiffs fail to state a RICO claim under Rule 12(b)(6) and Rule 9(b). And "[i]f a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Tal*, 453 F.3d at 1270. Accordingly, the Motion to Dismiss is **GRANTED** as to Claims One and Two, which are

[8] To the extent Plaintiffs allege that "Haga, Nightingale, Dawkins and Burgess utilized the U.S. Mail, private and/or commercial interstate carriers and emails transmitted by wire to continuously misrepresent the Stivax device through fraudulent misrepresentations," [Doc. 71 at ¶ 91], Plaintiffs' Amended Complaint does not contain sufficient factual allegations about the contents or time of these alleged misrepresentations or sufficient allegations establishing that these non-Parties were acting as Biegler's agent.

**DISMISSED without prejudice**.[9]

**B. Plaintiffs' Remaining Claims**

Biegler also moves to dismiss Plaintiffs' claims for fraudulent misrepresentation, fraudulent concealment, civil conspiracy, and a violation of the CCPA. [Doc. 80 at 14–16]. Biegler argues that the two fraud claims should be dismissed because they are based "on alleged communications between Plaintiffs and Dawkins and Burgess, not Biegler." [*Id.* at 15]. It contends that Plaintiffs "fail to state . . . how these alleged representations can be imputed to Biegler." [*Id.*]. And, Biegler asserts, "[b]ecause [Claims Three and Four] fail as against Biegler, so too must [Claim Five] which alleges a conspiracy to commit [Claims Three and Four]." [*Id.*]. Finally, Biegler argues that Claim Six should be dismissed because (1) Plaintiffs' allegations are too general; and (2) Plaintiffs "base their CCPA claim on the fraud/misrepresentation claims," and because those claims are subject to dismissal, the CCPA claim must be dismissed as well. [*Id.* at 16].

Plaintiffs do not respond to these arguments at all. *See* [Doc. 82]. They do not discuss the requirements for stating a claim for fraudulent misrepresentation or concealment, common law civil conspiracy, or a violation of the CCPA. *See* [*id.*]. And they do not discuss how their allegations plausibly establish the required elements of any

[9] Biegler moves to dismiss Plaintiffs' claims with prejudice. *See, e.g.*, [Doc. 80 at 1, 16]. But Biegler does not assert a substantive argument in support or explain why dismissal with prejudice is appropriate. *See generally* [*id.*]. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). The Court cannot act as a party's advocate and will not undertake a futility analysis sua sponte. *Garrett*, 425 F.3d at 840. Accordingly, Plaintiffs' claims are dismissed without prejudice.

of their latter four claims. *See* [*id.*]. Instead, they include a single sentence in the conclusion of their Response: "[b]ecause the Plaintiffs' RICO counts state a cause of action, Biegler's arguments as to the remaining counts of the Amended Complaint fail." [*Id.* at 15].

The Tenth Circuit has stated that "a district court may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (quotation omitted). However, the Tenth Circuit has also recognized a distinction between a plaintiff failing to respond to a motion to dismiss at all and a plaintiff filing a response to a motion to dismiss, but not substantively addressing particular claims. *See Brown v. Nationwide Ins. Co.*, No. 21-4122, 2023 WL 4174064, at *9 (10th Cir. June 26, 2023). In *Brown*, the defendant moved to dismiss the plaintiff's breach of contract claim and bad faith claim. *Id.* The plaintiff opposed the defendant's motion to dismiss and argued that the breach of contract claim should survive, but she "did not address the bad-faith claim at all." *Id.* The Tenth Circuit concluded that, under the circumstances of the case, it was appropriate for the district court to treat the bad faith claim as "abandoned." *Id.* It explained: "The intentional relinquishment occurred because [the plaintiff] responded to the motion to dismiss but ignored the bad-faith claim and the arguments [the defendant] made against it, and instead, chose to focus only on her breach of contract claim." *Id.*; *see also C1.G on behalf of C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) ("The district court correctly dismissed Plaintiff's facial challenge here because he abandoned it by not addressing it in his response to Defendants' motion to dismiss.").

Following *Brown*, the Court concludes that Plaintiffs have abandoned their last four

claims because they do not raise substantive arguments against dismissal of them. *See United States v. Walker*, 918 F.3d 1134, 1153 (10th Cir. 2019) (recognizing that "perfunctory" arguments may be deemed waived). The Court does not suggest a categorical rule that a failure to address a specific claim always indicates abandonment and necessitates dismissal. *See Brown*, 2023 WL 4174064, at *9 n.9 ("leav[ing] for another day whether the failure to address an argument in response to a motion to dismiss categorically constitutes abandonment or requires a court to deem claims abandoned"). But here, the Court finds it appropriate to deem the claims abandoned. First, Plaintiffs have been represented by counsel since they initiated this action, and they are not entitled to liberal construction of their filings. *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007). Second, the Court cannot act as a party's advocate and has no obligation to raise arguments on behalf of a party that they did not raise themselves. *Garrett*, 425 F.3d at 840; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). And third, the Amended Complaint reaches 51 pages and contains 173 paragraphs, and it is not this Court's duty to search through the lengthy, complex pleading to determine whether Plaintiffs adequately allege each of their last four claims. *Cf. Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made.").

Because Plaintiffs filed a complete response brief but failed to present an argument as to why Claims Three, Four, Five, and Six should not be dismissed, the Court concludes that these claims have been effectively abandoned and dismissal is appropriate. *See Scott v. City of Tulsa*, 775 F. Supp. 3d 1190, 1202 (N.D. Okla. 2025) (deeming state law claims abandoned because the plaintiffs did not "attempt to address [the defendant's]

arguments related to the state law claims" in their opposition to the motion to dismiss); *Sullivan v. Unified Sch. Dist. No. 512*, No. 24-cv-02491-DDC-BGS, 2025 WL 2732589, at *7 (D. Kan. Sept. 25, 2025) (dismissing claims because the "plaintiff never respond[ed] to [the defendant's] dismissal argument" directed at the claims). The Motion to Dismiss is **GRANTED** as to Claims Three, Four, Five, and Six, which are **DISMISSED without prejudice**.

**CONCLUSION**

For the reasons set forth above, **IT IS ORDERED** that:

(1) Defendant Biegler GmbH's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 80] is **GRANTED**;

(2) Plaintiffs' claims against Biegler are **DISMISSED without prejudice** under Rule 12(b)(6);

(3) The Clerk of Court is directed to terminate Biegler GmbH as a Defendant in this case; and

(4) On or before **October 2, 2026**, Plaintiffs shall file a status report informing the Court of the status of the False Claims Act matter, any settlement with Solace, and any other matter Plaintiffs deem relevant. *See* [Doc. 65 at 6].

DATED: September 11, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge